The next case, number 22-1883, United States v. Nathan Reardon. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. My name is Hunter Tavares. I have a practice up in Bangor, and I represent the appellant, Nathan Reardon. I would ask if I could reserve one minute, Your Honor, for rebuttal time. Yes, you may. Thank you. So the lower court erred in this case in imposing a blanket restriction on all self-employment as a special condition of supervised release because that restriction or that condition is overly restrictive, and it's not related to the purpose, reasonably related to the purposes of supervised release. It's overly restrictive because it prevents Mr. Reardon from engaging in any work or profession at all as long as it involves self-employment. And this is overly restrictive because it doesn't connect the dots to the offense or protection of the public. Furthermore... Well, all of these alleged crimes were perpetuated in conjunction with his businesses. Yes, that's correct, Your Honor. So there is a nexus. He's using his businesses to defraud the federal government out of these COVID relief funds. And the test, as I understand it, Your Honor, is twofold. One is that there's a connection between the offense conduct and the occupation. Are you conceding that there's a connection? Any connection would be very broad in the fact that Mr. Reardon committed these offenses over the course of about a month while he was self-employed in his capacity as the owner of these entities. All right, so there's a broad connection. There's a very broad connection. And I understand the law is that it has to be reasonably directly related to the actual occupation, not self-employment, but to the occupation. Here, Mr. Reardon, the record shows that he was self-employed for 24 years, only had a minor criminal infraction in that capacity in 2011, and otherwise did not violate the law when he was self-employed. I thought the theory of the PSR was that this fellow got himself into heavy debt, which led to the fraud. And getting in debt was not a good thing for his chances of being law-abiding while he was on supervised release. And if you're self-employed, it's a lot easier to get in debt than if you're an employee. If you're an employee, you either get paid or not. You're not taking on any financial obligations. If it's your own business, you start taking on, as he did, obligations that turn into debt. Why isn't that an appropriate rationale for the court saying, if I'm going to let you out of prison and be on supervised release, I don't want you having an employment scenario that facilitates you getting into debt? Well, I think your theory there, Your Honor, is beyond what the district court found. Well, isn't that the PSR's theory? I don't know if the PSR had a theory, but the PSR did indicate that Mr. Reardon had filed for bankruptcy around this time and had been in debt. But to connect that to there being a potential harm for recidivism, the court just simply didn't make that finding. And, in fact, Mr. Reardon, the record shows that while he was on pretrial release, he remained self-employed. He did not – But he reengaged in prohibited conduct. Say that last – He reengaged in prohibited conduct. He tried to get more loans. He was found to have violated the conditions of release by applying for emergency rental assistance loans. But I think it's important that there was no findings that there was any fraudulent activity there. There wasn't any harm to the public when that was engaged in, and Mr. Reardon paid the price by having his bail revoked. But, counsel, why was it an abuse of discretion for the district court to conclude that a narrower limitation, for instance, requiring your client to first contact the probation office to seek permission for certain types of self-employment, why wasn't it – why was it an abuse of discretion that the district court decided that wouldn't work here because they had already imposed a condition like that pretrial and your client had violated it? So he'd already demonstrated that he would not be able to follow a provision that required him to first consult with the probation office. It was abuse of discretion because the court didn't make any finding that there was any risk or danger to the public because although Mr. Reardon did violate the bail on pretrial release, the public wasn't harmed in that there wasn't any fraud. And, in fact, Mr. Reardon paid back $8,500 of the restitution prior to sentencing based on him being self-employed. But even if there wasn't fraud, hadn't he demonstrated that he wouldn't be able to comply with the condition that required him to check with the probation office before doing something related to his job? Unfortunately, in that situation, he didn't, I guess, inspire confidence in the court that he could follow the condition. But the court found it not appropriate to impose supervised release that imposed all these other conditions, supervised release. And although even if there's perhaps a concern that Mr. Reardon may not be successful on supervised release, the conditions still have to be narrowly tailored to be the least restrictive. And didn't Judge Walker leave open, expressly leave open the possibility that, well, if some specific instance of self-employment came along, then the judge was open to him coming back and asking for a modification of the terms of relief, which would seem to make a lot of sense. Instead of just hypothesizing what type of self-employment it would be, the court would then have before it a specific type. Yeah, the court did leave that door open. But I think that door is always open to a defendant because you could always file a motion to modify. Yes, but it's very different if the judge has actually noted that someone could come back and do it, particularly where you would have a very different record if you came back with a specific plan or employment in mind. Well, and I understand your point here, Your Honor, but it was our position and Mr. Reardon's position that just completely stopping him from doing any self-employment, whether it's renting apartments, being an auto mechanic, being a martial arts instructor, that's just too broad of a brush to use to wipe all those possibilities out, and particularly when the court didn't find that there was a connection to public safety in being self-employed. The court had a lot of other options to, I guess, reach that same goal. One could have been to impose a similar condition not to apply for any government aid without permission of the approval of the supervising officer or not to engage in running these businesses that he was running at the time that he was convicted. But to just simply say you can't do any of these things that you've done for 23 years and 11 months of your life without any criminal violations is just too restrictive of a condition in this case, and I think sets a concerning precedent that people could be restricted from making a living simply because they committed a crime while doing a certain occupation or being self-employed. Counsel, what is it that your client has plans to do upon his release in terms of self-employment? In other words, what does he very concretely think he's going to be prevented from doing by this condition? Particularly renting the apartments. PSR talked about how he rents apartments in two towns in Maine on a lease-to-own basis, and that's how he was making money, supporting himself and his family prior to being sentenced. In this case, that's how he paid back $8,500 of the restitution. So who's doing that while he's incarcerated? Well, this isn't on the record. Are you talking about pretrial? Now. Oh, now? Who's taking care of the property management while he's incarcerated, collecting rents, et cetera? This would be beyond, I think, the scope of the record, but I believe it would be his father who has taken over the company and taken care of that aspect of those businesses at this time. Does your client own those apartments? No, they're lease-to-own, and that's indicated in the PSR. But then he rents them out to other people. Correct. I see. If there's no other questions, I see my time's almost up. If there's any other questions, I'd be glad to try to answer them. But just once again, once he's released, he could approach the court to say, let me start managing my property again. Yes, he could. I think he could certainly file a motion to modify, but all this information as far as apartments were before the court at the time of sentencing, and the court didn't find it appropriate to allow any sort of self-employment at that time. So that's the concern here. Thank you, Your Honor. Thank you, counsel. At this time, counsel for the appellee, please introduce himself on the record to begin. Good morning. May it please the Court. Benjamin Block on behalf of the United States. The district court here acted well within its discretion in imposing a condition of supervised release that prohibited Mr. Reardon from engaging in self-employment. There are three factors or findings that must be satisfied by the record in order to impose an occupational restriction such as this. The first is a reasonably direct relationship between the occupation and the offense. The second is that the restriction be reasonably necessary to protect the public and prevent the defendant from reengaging in similar conduct. And third, that the restriction is minimally restrictive both in duration and scope. And all three of those factors are satisfied here. As to the first, the nexus between the offense and the restriction here could not be more clear. The defendant could not have applied for these pandemic relief funds had he not been the owner of these businesses. Counsel, could I actually ask to move you to beyond that part of the test? Yes. In particular, I'm wondering, can you point me to any findings that the district court made that a total ban on self-employment was a condition that caused no greater deprivation of liberty than necessary, which I believe is required? Yes. So this requires some inferences, but the defendant objected to the wholesale ban on self-employment. The government suggested a middle road where the defendant could only do so in coordination with probation. The court clearly considered those options and made a determination that that was not sufficient, and he commented that greater caution was necessary given the travel of the case here. And that, of course, is a specific reference to the fact that the defendant could not comply with his pretrial release conditions and applied for 11 additional applications for pandemic relief while on release with a prohibition on seeking pandemic relief. You also have the court's finding that the period of incarceration was necessary to protect the public, and that concern on the part of the court doesn't dissipate when it comes to the assessment of supervised release conditions. So I think— So your argument that he couldn't comply with the condition even if there wasn't any harm to the public, there wasn't any fraud, as your opposing counsel has argued, just the mere fact that he couldn't comply with the condition while he was on pretrial release, is the finding that the total ban didn't cause any greater deprivation of liberty than necessary? Yes, although I would push back slightly in that the business on whose behalf he applied for ERA funds was not licensed to do business in Maine at that time, so I'm not as confident as my fellow counsel that there was no fraudulent component to those applications. This also was not a— Was the court aware of that? I'm sorry? Was the court aware of that? Because you want us to make inferences. So was the court aware of the fact that the business was not licensed? I believe it is in the pre-sentence report, although I would have to go back to look to direct the court to a specific— So is it your position, just to piggyback off Judge Rickleman's question, that there's enough in the record for us to infer the court's reasoning? Yes, and certainly the pre-sentence report emphasized that the defendant's self-employment in the past had resulted in three bankruptcies and more than a million dollars in debt, and between the inability to comply with pretrial release, the problems that had occurred for the defendant while engaged in self-employment. Can I ask you, though, why is the bankruptcy relevant? And again, please tell me if I'm wrong, but I understood that the only basis for applying a total ban on self-employment like this is to protect the public, to protect the safety of the public. So why is the fact that the defendant may or may not be a good business person, for lack of a better way to put it, a basis for imposing a restriction that has to be targeted only at increasing safety for the public? Because the public is harmed by a defendant running up debt that he is unable to repay. So the creditors and lenders, or the federal government, were the federal government to provide a business grant for the loan. You think safety of the public under the meaning of the statute includes running up debt? It includes economic harm. So if the defendant finds himself unable to repay debt, then that's an economic harm to the community. But doesn't the existence of the debt provide an added incentive to engage in fraud so you can pay off the debt? Certainly. So it could actually inspire additional crime. And I would also suggest that this was minimally restrictive. In another respect, the defendant wasn't prohibited from engaging in any of the trades in which he had a skill set that didn't prohibit him from being a property manager or being an auto mechanic or being a karate instructor. It only prohibited him from being the owner of that business. So he could go work for an auto repair shop. He could go work for a karate studio. He could join a property management company. And in that way, he could still utilize his skills. Can I ask you a question? I don't know what the structure of all these various businesses are, but would the government's position be that he can't be an independent contractor? In other words, if he's hired as a mechanic but he's not actually taken on as an employee in the sense that all the sort of normal things that an employer does for an employee are part of the employment relationship and he's just hired, you know, come work 10 hours a week as a mechanic, this is what will pay you, and then you'll have to pay taxes yourself. Is that barred under your understanding of the district court's order? That's an interesting question, Judge. I haven't fully considered that. I think that as long as he's not putting himself in a position of owning a business and so not taking on employees, that's a great question and probably one that would have to be resolved by the probation officer in coordination with the defendant. And if there were a concern about that, they could bring it to the court. But that might be a situation in which there's a legitimate need for quasi-self-employment as an independent contractor. And the court specifically invited him to come back to modify the conditions if a circumstance like that arose. Well, let me ask you this. Just thinking about his other business, I don't know if the record is clear as to how it's structured, but my thinking is that if he's leasing property, he's leasing property as the lessee, which means he's the person legally responsible for whatever happens on the premises, and then he's subleasing. But the court is saying even though you may have some legal liability vis-à-vis your lease agreement with the owner, you can't have anything as an independent business person to do anything to protect yourself. How does that work? The structure of that business is a little bit opaque, and the record's not entirely clear on the agreement between him and the actual owner, the terms of the rent-to-lease. But certainly... But the breadth of the court's order certainly would complicate it. It would, and the court considered alternatives, and I would suggest that it wasn't an abuse of discretion given the manner in which the defendant operated that business. Well, should the defendant have borne the responsibility for providing more details to the court for its consideration? If the defendant felt that the pre-sentence report didn't adequately provide the court with the necessary information to make an informed judgment about the manner in which its business was being operated, then yes. He certainly has more of that information than the government does for the court. But this is an abuse of discretion determination, and in light of the fact that the defendant's conduct here took place over the course of two years, not one month as he suggests, two years from the time he first applied for a PPP loan from TD Bank to the final ERA loan that he made while on pretrial release, the court was reasonably concerned about harm to the public, and I would suggest tailored and approach with an openness to reconsidering it if circumstances warrant it. And so the government would request that the court affirm, unless there are any further questions. Thank you. Thank you, counsel. If counsel for the appellant would please reintroduce himself on the record. He has a one-minute rebuttal. Hunter Tavares again for Nathan Reardon. I think the questions that the court had about, well, what can he do as an independent contractor or leasing these apartments, just go to show how overly broad this restriction is and how it could prevent Mr. Reardon from essentially doing anything to support himself or to make money. And the court could have been much less restrictive, really used a scalpel rather than a sledgehammer. How do you respond to my question to your brother, counsel, that the defendant should have been a little bit more aggressive in providing the court with the information, more information about how the court's order would restrict his ability to provide income from at least these particular businesses? Well, I think the court had all the information it needed at the time of sentencing. The PSR outlined how Mr. Reardon had these properties in Holland and I'm drawing a blank on it now, but the other Dexter, Dexter, Maine, how he had these properties and was renting them out. We talked about that at sentencing as well, how Mr. Reardon was able to pay 8,500 in restitution. It was actually 9,000 that he paid, but 500 went to the court fee to take care of all this. So the court was well aware of what Mr. Reardon was doing to support himself and his family at the time, but nonetheless declined to allow him to do any self-employment. And if I can just finish the thought on that too, Your Honor, the condition went as far as to say he can't even be employed by, they said he had to be employed by a disinterested third party, which even prevents him from working under his father in these capacities with the apartments. Well, it makes me wonder if his father is in fact his agent as opposed to vice versa. Perhaps that was the court's concern, but there wasn't any particular findings on the record about that. Thank you. Thank you, counsel. That concludes argument in this case.